784 A.2d 1134

Samuel Cornell **HILLARD,**

v.

**STATE of Maryland.**

**No. 692, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 6, 2001.

Bradford C. Peabody, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jack Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted Before DAVIS, KENNEY, and DEBORAH S. EYLER, JJ.

DAVIS, Judge.

On May 31, 1996, appellant was convicted of robbery with a deadly weapon, use of a handgun in a crime of violence, two separate counts of assault and battery, and false imprisonment. The circuit court, on July 10, 1996, sentenced appellant to the following: twenty years imprisonment, with all but ten years suspended, and five years probation for robbery with a deadly weapon; ten years concurrent for the use of a handgun, with five years mandatory; one year concurrent for the assault and battery charges; and one year concurrent for false imprisonment. Appellant filed a petition for post-conviction relief on October 10, 1996. We affirmed appellant's conviction on May 14, 1997 and, on January 14, 1998, appellant withdrew his petition for post-conviction relief.

At a hearing on January 14, 1998, the circuit court (Nichols, J.) reconsidered appellant's sentence and imposed five years imprisonment on the robbery with a deadly weapon charge, five years for the use of a handgun in a crime of violence, to be served concurrently and, according to the court, "[t]hat five years without parole." The revised sentence was to commence retroactively to appellant's original sentence commencement date of November 14, 1995. Appellant served less than four years of his five-year sentence and was released on March 30, 1999.

Subsequent to his release from prison, appellant, on May 2, 1999, was charged with the murder of his former girlfriend's boyfriend. On or about May 4, 1999, the Division of Parole and Probation filed an application for warrant on the basis that appellant violated probation. Agent Christina Stockton, Senior Agent, and Mary Grace Waldron, Field Supervisor I, both employed by the Maryland Department of Public Safety and Correctional Services, Division of Parole and Probation, reported to the court appellant's "ill adjustment to supervision." In that report they stated:

[Appellant] was released on Mandatory Release from Southern Maryland Pre Release Unit on March 30, 1999. Since his release from incarceration, [appellant] has given

this Agent several different addresses where he is residing. On two occasions this Agent attempted to verify the addresses given by this offender. In both instances on April 22, 1999 and April 29, 1999 the home verification was unsuccessful. On the first instance, the resident of the home had no knowledge of the [appellant]. In the second instance, this Agent discovered that this was the residence of the [appellant's] aunt. She informed this Agent that [appellant] did not reside at that address. Therefore, [appellant]'s misrepresentation regarding his residence prohibited this Agent from conducting a home verification.

In addition, it has come to this Agent's attention that on May 2, 1999 [appellant] allegedly Committed First Degree Murder. This Agent was informed by Detective Jernigan of the Prince George's County Police Department, that [appellant] gunned down the new boyfriend (Wayne Sellers) of his ex-girlfriend (Terri Lewis). A warrant has been issues [sic] for [appellant] by the Police Department charging him with First Degree Murder (Case # CR000E00125041). At this time [appellant] is being sought by the Prince George's County Police Department.

*In light of the aforementioned facts it is respectfully requested that a Warrant be issued charging appellant with violation of Probation.*

On May 24, 1999, the State filed a petition against appellant for violation of probation and a warrant was issued for his arrest. He was served with a copy of a bench warrant on June 5, 1999 and was assigned a public defender on June 11, 1999. Appellant's public defender, on July 15, 1999, filed a motion to dismiss the petition for violation of probation [1] based on the following reasons:

---

1. We note that the record indicates that the motion to dismiss, dated July 15, 1999, requested the court for an order dismissing the "indictment and each count therein." In the circuit court's denial of that motion, on September 15, 1999, the trial judge made mention of the fact that that "indictment" related "solely to a violation of probation," not to appellant's subsequent charge of murder.

1. That the [appellant] in the herein cause is charged with violation of probation of a Court Order of July 10, 1996.

2. That on January 14, 1998, the [appellant] was resentenced in this matter to a period of five years incarceration without parole. This sentence dated from November 14, 1995.

3. That the [appellant] is not on probation in this case.

. . .

The circuit court (Sothoron, J.), on September 15, 1999, denied appellant's motion to dismiss, stating in its Order:

Furthermore, this [c]ourt notes that the Reconsideration of the [appellant]'s Sentence by Judge C. Philip Nichols, Jr. was illegal, in that such violated the provisions of Maryland Rule 4–345. Accordingly, the [appellant] was and is still on probation pursuant to this Court's original sentence.

On March 3, 2000, appellant was convicted by a jury in the Circuit Court for Prince George's County (Krauser, Sherry, J.) of second degree murder and use of a handgun. On April 25, 2000, he was found guilty of violation of probation in the circuit court (Sothoron, J.). The court imposed a sentence of twenty years imprisonment with all but ten years suspended.

The following is the sequence of the proceedings before the circuit court:

11/14/95–Beginning date of revised sentence/date appellant incarcerated

5/31/96–Appellant convicted of armed robbery and related offenses

7/10/96–Appellant sentenced for robbery with deadly weapon to twenty years, all but ten years suspended, five years probation; ten years concurrent with five years mandatory for use of a handgun in the commission of a crime of violence; one year for false imprisonment and one year for assault and battery, to be served concurrently.

10/10/96–Petition for Post Conviction relief filed

1/14/98–Appellant's 7/10/96 sentence reconsidered pursuant to agreement between State and appellant that, in consideration for withdrawal of Post Conviction Petition, appellant is sentenced to five years for robbery with a deadly weapon and five years concurrent without parole for use of handgun in commission of crime of violence

3/30/99–Appellant's mandatory release after serving four years of 1/14/98 five year sentence; appellant received "Mandatory Supervision Release Certificate" that reads "the date on which the inmate's maximum term will expire is November 14, 2000."

5/2/99–Appellant charged with murder of ex-girlfriend's boyfriend (Basis of Violation)

5/4/99–State filed petition for violation of probation and appellant arrested on bench warrant on 6/5/99

7/15/99–Appellant filed motion to dismiss Petition for Violation of Probation based on contention that, pursuant to 1/14/98 reconsideration of his original sentence, he was no longer on probation (No probationary period was imposed at 1/14/98 hearing)

9/15/99–Appellant's Motion to Dismiss Violation of Probation Petition denied; circuit court concluded that reconsideration of sentence was illegal in that it violated Maryland Rule 4–345 because reconsideration hearing was not heard by sentencing judge, notwithstanding agreement between appellant and State and, because the reconsideration proceeding was illegal, appellant was on original probation

3/3/00–Appellant convicted by jury in Prince George's County Circuit Court of second degree murder of ex-girlfriend's boyfriend

4/25/00–Appellant found guilty of violation of probation and sentenced to twenty years, with all but 10 years suspended; appeal subsequently filed to Court of Special Appeals

As noted in the time line, above, appellant filed this timely appeal presenting one question for our review:

Did the trial court err in finding appellant in violation of probation?

## DISCUSSION

Appellant contends that he was not on probation and, *a fortiori*, could not be found to be in violation of probation. According to appellant—and conceded by the State—the parties reached a binding agreement at appellant's hearing for post-conviction relief. That agreement was summarized by the Assistant State's Attorney:

Your Honor, in consideration for the [appellant] withdrawing his post-conviction motion the State is agreeing to have the sentence in this case reconsidered to five years mandatory for the handgun violation and a concurrent five years on the RDW [robbery with a deadly weapon] count. No back-up time at all.

The court reiterated their agreement, stating:

As I understand it[,] part of the agreement is I resentence you today as to count one robbery with a deadly weapon the sentence would be five years. As to count two the use of a handgun in the commission of a crime of violence or a felony the sentence is five years. That five years without parole. And it accounts from, was it November 14th, 1995?

[PROSECUTOR]: Yes.

Appellant contends and the State concurs, that the agreement entered into by appellant and the State at the January 14, 1998 hearing was binding upon all parties. Appellant argues that the circuit court improperly contravened the agreement by re-sentencing appellant to the original sentence. The State "agrees that it requested that that bargain be adopted by Judge Nichols . . . ." and will "not take a contrary position on appeal." Judge Sothoron *sua sponte* determined that Judge Nichols's modification of appellant's sentence at his post-conviction hearing was improper.

[Appellant's counsel] on behalf of appellant filed on July 15, 1999 a motion to dismiss. The basis in part was that the [appellant] was no longer on probation. This [c]ourt denied

that motion on September the 15th, 1999 by way of written word and in doing so this [c]ourt pointed out that Judge Nichols had illegally reconsidered appellant's case. That in the [c]ourt's mind, and I am talking about myself, Judge Nichols's reconsideration was a violation of Maryland Rule 4–345 which speaks to reconsideration of sentence. So therefore I determined that appellant was still on probation and therefore denied the motion to dismiss.

Maryland Rule 4–345 states, in pertinent part:

(a) **Illegal sentence.** The court may correct an illegal sentence at any time.

(b) **Modification or reduction—Time for.** The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition.... Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity,.... The court may not increase a sentence after the sentence has been imposed, except that it may correct an evidence mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

(c) **Open court hearing.** The court may modify, reduce, correct, or vacate a sentence only on the record after notice to the parties and an opportunity to be heard.

During the following colloquy, the State objected to a review of appellant's sentence during the post-conviction proceedings:

Your Honor, first I would say post-*Brooks v[.] State[Warden, Md. Penitentiary]*, 1 Md.App. 1 [, 226 A.2d 354 (1967) ], clearly says that post-conviction is not a place for review of sentence or reconsideration of sentence. Many times sentences are changed at post-conviction. But the proper way to do them is the post-conviction goes before another judge but the reconsideration or review has to go back to the sentencing judge. Just as [Maryland] Rule 4–345 says that a motion for reconsideration or reduction of sentence should be brought back before the sentencing court. And that, I believe it is *Duffin v[.] Warden of Maryland Penitentiary*,

235 Md. 685[, 202 A.2d 597 (1964) ], hold that. Also in *Wimbush v[.] Warden*, 229 Md. 616[, 182 A.2d 357 (1962) ], the reconsideration must go back to the trial court. Therefore I, my position is that when Judge Nichols did this it may be done all the time but it was wrong. And since it was wrong it could be considered an illegal sentence. And in order for an illegal sentence to be corrected it goes back to the sentencing court once again, which would be yourself. So I would argue that this sentence was not done properly to reduce it to five years and it should go back to you. And you at any time can correct what we believe to be an illegal sentence.

■ On this appeal, as we have noted, the State concedes that the agreement by appellant to withdraw his post-conviction petition in exchange for a reconsideration of his sentence was a binding agreement. Although the typical agreement between the State and an accused contemplates a reduced charge or lesser sentence in consideration of a defendant's voluntary relinquishment of his right to a trial and the guarantees attendant thereto, the law is well settled that, in the absence of any jurisdictional defect, such agreements are based on contract principles and must be enforced. As the Supreme Court said in *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971):

Nevertheless, *we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas* of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the

sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

(Emphasis added.)

■ Thus, although the case at hand does not involve a plea agreement presented to the court prior to pre-sentencing proceedings and investigation report submitted by the Division of Parole and Probation (*see Smith v. State*, 80 Md.App. 371, 375, 563 A.2d 1129 (1989)), Maryland Rule 4–243(a)(6) provides that a plea agreement may propose "a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to subsection (c) of this rule." Although we cannot discern from the record before us why the State was motivated to enter into the instant agreement, the State, after evaluating the merits of appellant's post-conviction petition, may well have decided that there was merit to the petition and that it would be required to re-try appellant. Speaking to just such considerations, the Court of Appeals said, in *Beverly v. State*, 349 Md. 106, 123, 707 A.2d 91 (1998), that "plea agreements also advance law enforcement efforts by eliminating 'many of the risks, uncertainties, and practical burdens of trial, permit[ting] the judiciary and prosecution to concentrate their resources on those cases in which they are most needed.' " (Citing *State v. Brockman*, 277 Md. 687, 693, 357 A.2d 376 (1976).) The sentence imposed by Judge Nichols pursuant to the agreement between appellant and the State was therefore valid.

■ Having determined that the five-year sentence for robbery with a deadly weapon and the five-year mandatory sentence without parole for use of a handgun in the commission of a crime of violence were valid, Judge Sothoron erred in his re-imposition of the original sentence because, in violation of Rule 4–345, it was an attempt to modify a previously imposed valid sentence.

■ Turning to the primary basis of appellant's appeal, Judge Sothoron, upon invalidating the reconsideration proceedings conducted by Judge Nichols, reinstated the original sentence which, unlike the sentence imposed by Judge Nich-

ols, imposed a five-year period of probation. No part of the sentence imposed by Judge Nichols had been suspended and, thus, there was no probationary period imposed. Appellant could only have been found guilty of violation of probation under the sentence originally imposed. Because we hold that re-imposition of that original sentence was error, parole and probation agents were without authority to apply to a court for violation of that probation.

On March 30, 1999, appellant was released pursuant to Md.Code (1999 Repl.Vol.), Corr. Serv. § 7–501 (C.S.), entitled "Release on Mandatory Supervision," which provides:

The Division of Correction [2] shall grant a conditional release from confinement to an inmate who:

(1) is serving a term of confinement of more than 12 months;

(2) was sentenced on or after July 2, 1970, to the jurisdiction of the Division of Correction; and

(3) has served the term or terms, less diminution credit awarded under Title 3, Subtitle 7 and Title 11, Subtitle 5 of this article.

An individual on mandatory supervision remains in legal custody until the expiration of the individual's full term and is subject to "all laws, rules, regulations and conditions that apply to parolees and any special conditions established by a commissioner." C.S. § 7–502.

---

**2.** The Revisor's Notes to C.S. § 7–501 explicate the agency responsible for administering the Mandatory Release Program:

This section is new language derived without substantive change from the first sentence of former Art. 41, §§ 4–501(13).

In the introductory language of this section, the requirement that "[t]he Division of Correction shall grant" a conditional release from confinement to an inmate under the specified circumstances is added to state expressly that which was only implied in the former law, *i.e.*, *the Division of Correction is the entity that is responsible for granting* the conditional release an inmate is entitled, under the specified circumstances, to be granted the conditional release.

Also in the introductory language of this section, the reference to "confinement" is substituted for the former reference to "imprisonment" for consistency within this section and throughout this article.

Parole and probation Senior Agent Stockton and Field Supervisor I Waldron, on behalf of the Division of Parole and Probation, applied for a warrant charging appellant with violation of probation. Judge Sothoron, after concluding that the reconsideration proceedings were invalid, found appellant guilty of violation of probation pursuant to the original sentence. Because, in our view, appellant was not on probation, the circuit court was without jurisdiction to enforce appellant's violation of his mandatory supervision release. Mandatory release under C.S. § 7–501, like parole, is uniquely an executive function and the enforcement and regulation thereof is vested solely within the Division of Parole and Probation.

Patently, during appellant's prison term, he was awarded "diminution credits." "[A]n inmate committed to the custody of the Commissioner is entitled to a diminution of the inmate's term of confinement as provided under this subtitle." C.S. § 3–702. Pursuant to C.S. § 3–704, diminution credits are earned by an inmate to reduce the term of his or her confinement. *See also Frost v. State*, 336 Md. 125, 128, 647 A.2d 106, *reconsid. denied*, (1994). Thus, "[a]ssuming an inmate does not forfeit diminution credits as the result of a disciplinary hearing," he or she can "earn the right to be released on a date much sooner than that designated by ... [the] original term of confinement." *Id.*

Correctional Services § 7–504, entitled "Revocation of Mandatory Supervision," provides:

(a) Diminution credits previously awarded.—The commissioner presiding at an individual's mandatory supervision revocation hearing may revoke any or all of the diminution credits previously earned by the individual on the individual's term of confinement.

(b) New diminution credits.-An inmate may not be awarded any new diminution credits after the inmate's mandatory supervision has been revoked.

The diminution credits to which C.S. § 7–504 refers are set out in Md. Ann.Code, art. 27, § 700(d), (e), and (f), which

provide for a deduction of ten days in advance for each calendar month from an inmate's sentence for good conduct, five additional days deducted from an inmate's sentence where he or she has "manifested satisfactory performance of work tasks assigned," and five additional days from the inmate's term of confinement for "satisfactory progress and vocational or other educational and training courses."

Appellant's maximum five-year term, pursuant to his mandatory release date would have ended on November 14, 2000. He was, in fact, released, however, on May 30, 1999. Thus, he received a reduction in his term of confinement, i.e., he received diminution credits that reduced his confinement by one year and approximately five months. For that period, appellant was under the authority and supervision of the Division of Parole and Probation.

As further evidence that appellant was under the supervision of the Division of Parole and Probation, is the colloquy between counsel and the court that occurred at the end of appellant's hearing before Judge Sothoron on April 25, 2000.

> [PROSECUTOR]: I would also argue even though he was out on mandatory release time he still ... he still signed the paper that said he accepted the conditions of mandatory supervision release that he was supposed to go to Probation. So at this point he was still on probation. At that point when he then, when he violated it on May 2nd, 1999 it would be a violation of probation whether it is with them or with you. But in this case I believe that it should go back to the original sentence because of the way the sentencing was done.

> THE COURT: What is the State's position [PROSECUTOR] about purs[u]ing this matter today?

> [PROSECUTOR]: About pursuing it today?

> THE COURT: Yes, ma'am.

> [PROSECUTOR]: My position is that it should go back to you and you could reconsider that sentence back to your original sentence.

THE COURT: Well my order that [appellant's counsel] and myself eluded [sic] to dated September the 15th speaks for itself in the sense that I indicated that Judge Nichols's sentence in my mind was—

. . .

THE COURT:—improper.

[PROSECUTOR]: Yes.

THE COURT: I used the word illegal because I think it is illegal. And I said according [sic] the [appellant] was and still is on probation pursuant to the [c]ourt's original sentence. Now my question to you is, is the State still intending on prosecuting [appellant] for violation of probation?

[PROSECUTOR]: Yes.

THE COURT: Okay. All right [sic]. [Appellant's counsel], what I am going to do is . . . treat your comments as a motion to dismiss the petition for violation of probation based upon the fact that the [appellant] was not placed on notice that he was on probation as of the date of his release, which I understand it now to be pursuant to Judge Nichols's sentence, March the 30th, 1999. And I am going to allow [the prosecutor] to have, pursuant to that motion filed in open court State's Exhibit No. 1 . . . [.]

[PROSECUTOR]: Yes, Your Honor.

THE COURT: Which would be the document that—

. . .

THE COURT:—you just referenced.

. . .

[APPELLANT'S COUNSEL]: It says Your Honor—

. . .

[APPELLANT'S COUNSEL]:—and I am quoting Your Honor. ["]I understand that if I fail to comply with any of the conditions listed on the reverse side of the certificate I may be retaken on a warrant issued by the Maryland Parole Commission.["] . . . We do not have the

reverse side of it. But we would object to that being entered, Your Honor.

THE COURT: All right. Does it contain [appellant's] signature on it?

[APPELLANT'S COUNSEL]: Yes, sir.

[PROSECUTOR]: It does.

. . .

THE COURT: ... It appears to this [c]ourt that based upon this exhibit that [appellant] was still under the supervision of the Department of Parole and Probation as of March 31st, 1999.

. . .

Although we disagree with the court's assessment that appellant was on probation, we agree with its determination that appellant was under the supervision of the Division of Parole and Probation.

Consequently, the State erroneously petitioned the circuit court for a violation of probation hearing when the court had no basis to hear the petition. Because we hold that appellant was on mandatory supervision release rather than on probation, the proper procedure for a violation of mandatory supervision release is left to the authority of the Division of Parole and Probation. Pursuant to C.S. § 6–104, the Division shall

. . .

(ii) supervise an individual under mandatory supervision until the expiration of the individual's maximum term or terms of confinement;

. . .

(iv) issue a warrant for the retaking of an offender charged with a violation of a condition of parole or mandatory supervision,

. . .

Although it is the Commission, not a court, that hears violations of mandatory supervision release, those administrative hearings are subject to judicial review. *See* COMAR 12.08.01.22.

For the foregoing reasons, appellant's original sentence reinstated by Judge Sothoron at the April 25, 2000 hearing must be vacated. The two concurrent five-year sentences ordered by Judge Nichols were legal. Accordingly, we re-instate the sentence imposed at appellant's re-sentencing hearing on January 14, 1998 as agreed upon by the State and appellant before Judge Nichols.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY (SOTHORON, J.) REVERSED AND SENTENCE VACATED; JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY (NICHOLS, J.) AFFIRMED AND SENTENCE REINSTATED.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**